**C. T. MAULDIN, Individually, and as Surviving Partner of M. & W. Hog Ranch, Appellant,**

v.

**John S. SPARKS et al., d/b/a S. & S. Hog Farm, Appellees.**

No. 16668.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 22, 1965.

---

Parkhill, Watson & Grantham, and Weldon Parkhill, Grand Prairie, for appellant.

Cantey, Hanger, Gooch, Cravens & Scarborough, and Sloan B. Blair, Fort Worth, for appellees.

LANGDON, Justice.

This is a suit for rescission of a contract and to recover money paid pursuant to its terms. The contract was for the sale of hogs and all equipment, feed, supplies, ranch land and improvements thereon used in the operation of the business, including the assignment of a Government contract for the collection of garbage. Trial was to a jury. It found that plaintiffs had waived their rights to recover any money paid to defendant. The Court, disregarding the jury finding as to waiver, denied the defendant's motion for judgment on the verdict and sustained the plaintiffs' motion for judgment non obstante veredicto and entered judgment for the plaintiffs in the sum of $12,356.50, based upon jury findings.

We affirm.

The nature of defendant's business covered by the contract in question was the buying, feeding and selling of hogs. One of the most valuable assets of the business was a garbage pick-up contract the defendant had with the Amarillo Air Force base located near by, under which he received $750.00 per month and was permitted to feed the garbage to his hogs. In our opinion the status of this Government contract and the ability of the defendant to assign it is the hub around which this entire transaction revolved from its inception. While this question of assignment was being resolved the business had to be operated. It could not be handled piecemeal. The garbage had to be collected, the hogs fed, cared for and sold and additional hogs purchased in order to maintain the operation.

The provisions of the contract pertinent to this appeal are essentially as follows: Upon its execution on December 18, 1961, the plaintiffs were to deposit $10,000 in escrow and immediately take possession of and start operating the hog ranch until the consummation or termination of the contract.

On January 10, 1962, the plaintiffs were to release the $10,000 in escrow and pay an additional sum of $22,121.50 and receive clear title to all the livestock on the ranch. The plaintiffs complied with the above provisions, which enabled them to fully operate the business including sale of livestock which they could not have done had a lien been retained on the hogs. Under the contract plaintiffs were entitled to profits pending its consummation or termination.

Paragraph one of the contract following the preamble provided: "In the event that for any reason the said contract with the United States Government can not be assigned, purchasers may at their option cancel this contract and receive back all moneys theretofore paid by them." The contract further required plaintiffs to pay an additional $30,000 in installments of $750.00 per month beginning February 10, 1962.

It is undisputed that on March 2, 1962, after the execution of the contract the United States refused to permit the assignment of the garbage contract and thereafter cancelled it.

At this point the plaintiffs demanded the return of their money theretofore paid and tendered to defendant the entire business of which they had taken possession. It was impossible for plaintiffs to restore all the hogs in kind because some had been sold by them in accordance with their rights under the contract. Plaintiffs offered to credit the defendant in the amount of the fair market value of the hogs—determined as of the time the plaintiffs were entitled to rescission in early March, 1962. The jury found that the fair market value of such hogs was $22,015.00, which deducted from $34,371.50 (This amount included $22,121.-50, $10,000.00 escrow and three $750.00 payments.) paid to defendant by the plaintiffs, formed the basis of the judgment for the latter in the sum of $12,356.50. The sufficiency of the evidence in support of the jury finding as to value is not challenged by the defendant.

Plaintiffs in their suit to rescind made no effort to obligate the defendant for payment of any losses or liabilities. They had purchased a going business in its entirety. In line with their rights under the contract they sought to return the business in its entirety in so far as it was possible to do so considering the nature of the business and the necessity to intermingle the original hogs with those later purchased.

The defendant contends that the contract was to be consummated on January 10, 1962, and that the plaintiffs waived their right to rescind by releasing the $10,000.00 escrow money and payment of the $22,015.00. In our opinion the plaintiffs had no option whatever, as of January 10, 1962, except to pay the additional money or lose their $10,-000.00 escrow deposit.

Plaintiffs had paid no money to defendant until January 10, 1962. The provision in paragraph one, which entitled plaintiffs to "receive back all moneys theretofore paid by them" in event the garbage contract could not be assigned, necessarily referred to a time after which the plaintiffs had paid money to the defendant. On January 10, 1962, the Government had made no decision on assignment of the contract. On that date the plaintiffs had no right to cancel or rescind and thus could not have waived a right which was not at that time available to them.

In our opinion this payment of $32,121.50 did not constitute consummation but merely marked the point in time at which plaintiffs would receive title to the livestock and thus be enabled to fully operate the business by not only buying and feeding but to sell. In addition to the livestock, plaintiffs were to receive the land, the equipment and assignment of the Government contract. It is impossible to allocate the amount of consideration for any particular asset.

In support of the finding of waiver the defendant contends that (1) the plaintiffs knew the Government could cancel the garbage contract, and (2) plaintiffs on January 10, 1962, were aware that the Government had not assigned the garbage pick-up contract, but were "willing to pay off and get started".

The right of the Government to cancel the garbage contract had nothing to do with the defendant's assignment of same and Government approval thereof. Further, on January 10, 1962, the plaintiffs did not know that the Government would not approve the assignment and they had no right to rescind or cancel until this fact was made known to them. Plaintiffs were required to fulfill all requirements imposed upon them by the contract with defendant until their right to rescind or consummate accrued to them. This right could not and did not accrue until early March of 1962. In the meantime, under the contract, they had the right to operate the business. The exercise of this right from December 18, 1961, is not evidence of the waiver of their right

to cancel which they did not have until March, 1962, when the Government refused to permit the assignment.

In summary, rescission is a fundamental remedy and one expressly provided for in the contract. The garbage pick-up contract which provided over 90% of the feed consumed by the hogs and $750.00 per month in revenue was a most valuable and important asset of the business. The cancellation provision based upon assignment of this Government contract was to protect the plaintiffs, against the uncertainty of Government action, until June 30, 1962, when the garbage contract would have expired by its own terms and plaintiffs would have had an opportunity to bid on a new one without competition from the defendant.

While the contract from the standpoint of clarity could in all probability be improved upon, the parties having agreed to its provisions are nevertheless bound by them.

All points of error are overruled and the judgment of the trial court is affirmed.